The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. John Wayne Myers, Appeal No. 201196. Good morning. I'm Chief Judge Howard. Judge Barron and I are very pleased to welcome Judge Gary Katzmann from the United States Court of International Trade who will be hearing the arguments with us. And Mr. Whipple, when you are ready, you may proceed. May it please the court and thank you, Your Honor. My name is Michael Whipple for the appellant John Wayne Myers. And Judge Howard, if I may ask for three minutes for rebuttal? Yes. Thank you. I appreciate that. Judge, the questions presented in this appeal are whether the court can enforce a special condition of supervisor release, which requires that a defendant fully participate in sex offender treatment, where a condition of that treatment requires that the defendant admit to the offense or other sexual assault offenses. And was Judge Carter permitted to impose a condition of supervised release for a conviction that occurred 21 years earlier as it was too temporarily remote? Mr. Myers was convicted of a sex offense in 1980 in Wisconsin 40 years ago. By 2001, Mr. Myers had been in and out of state prison following his 1980 conviction and in federal court where he was sentenced to a term of 235 months for a firearms charge. As part of that conviction, he was sentenced to a special supervised release condition, which was amended in 2017, which required that he fully participate in sex offender treatment program as directed by a supervising officer. Mr. Myers was in full compliance with that condition, except that he would not acknowledge that he was a sex offender or that he had committed a sex offense. Understandably, he made minimal progress in counseling and was, to say the least, difficult to work with. To be clear, and because the government intimates that Mr. Myers did not in fact attend sex offender counseling, Mr. Myers did attend sex offender counseling with Duane Hogan. How is the challenge to that condition timely, where the sentence was rendered a very long time ago and, indeed, he didn't seek to challenge it on appeal until at least six months after even his request for modification? How is it timely? Judge, there are two issues with that question of timeliness. Number one, I'm challenging factually that he was, in fact, fully participating. So as a factual matter, he was fully participating. And adding the requirement that he admits was overreaching and should not have been considered by the court. In terms of timeliness, that's correct. He was convicted in 2001. Obviously, the record's clear. That condition was not appealed. That condition was amended to reflect more current trends and special conditions in 2017. And then there was a motion to amend, as the court is aware, the multiple conditions of counseling that were part of his supervised release, his special conditions of supervised release. I'm sorry. I still don't quite understand your response to the question of, alternatively, the timeliness from the modification of the conditions. So in terms of the court being able to decide was that condition factually violated, I believe the court is, there's no question that the court can determine that. The question of timeliness, Rule 32.1 does not require a formal and specifically drafted objection. In fact, Rule 32.1 does not even require a hearing to modify probation. It does not provide any limitations on when or who can modify or request a modification of probation. Nor does Rule 32.1 provide a limitation on how many times the defendant or the court or the government can modify probation or ask that probation be modified. I guess I don't understand. Basically, the appeal period runs from an action by that you're complaining about by the court. And I still not quite sure what your response is with respect to the 2000, I guess, 18 action. Obviously, there was not a timely appeal on that if that's what the court would be basing their decision on. Obviously, that's true for 2001. But what I'm trying to say, probably inarticulately, and I apologize for that, is that that he objected to the legitimacy of this condition in recent time in 2020 and that there is nothing pursuant to Rule 32.1 that prohibits an objection at any point. And so what I'm asking the court to do is accept the objection to the legitimacy of the condition and from the 2020 objection at the revocation. Your contention is you can win even if we don't do that, right? Because you're saying that. Yeah. And as to that, there's a question as to the scope of the condition itself. I think that is embedded in your contention about whether there was compliance with it, because if I understand it right, you concede he never acknowledged or agreed to or admitted that he had committed the sex offense for which he was being given treatment. That's correct. Okay. And your contention is that despite that, he was in compliance with the condition that required him to, I don't know what the exact words were, fully participate in. That's right. Yeah, go ahead. No, I was more interrupting you and I apologize for that. So I guess what it seems to me is embedded in your contention that he's in compliance with it is an implicit claim that the scope of that condition did not include a requirement to acknowledge that he was a sex offender. That's right. As I was preparing for this. Do you have for that proposition? That seems like just a purely legal question about interpreting the scope of the condition itself, because if the condition did require him to admit that, then there's no way to say he was in full compliance with it. Right. So if the if either Judge Levy or Judge Carter's condition required that he admits to being a sex offender, then you're then you're correct. So what is so that seems to me that the critical question is, what is the scope of the condition and did it require his admission? Now, how are we supposed to resolve that? The judge clearly thought it did. And he's the one who imposed the condition. What is the basis for saying it did not? You know, perhaps that falls on a policy argument, Your Honor. But one of the things in preparing for this was, you know, trying to think about why didn't he object perhaps to these conditions or why didn't he object to having to admit that he was a sex offender? And, you know, what happens on the on the ground in these cases is he there's a lot of evolution in in counseling proceedings and there's a lot of evolution in, excuse me, in how counseling is conducted. In this case, there was no knowledge of, well, first of all, his counselor in probation knew that he was that he was approaching his sex offender treatment as a denial individual. That was well known. What was not known to either the court, certainly Judge Carter in 2001 and perhaps not Judge Levy in 2017, was that there would be a requirement that he admits to being a sex offender. That requirement did not come until, give or take, October, November, when he was presented. And that's what I'm saying is either that is implicit in the text of the condition that was enacted in 2001. If it's not, then I understand your argument. You would be saying he just never was subject to the condition that he's not complying with. But I guess what is the authority for the conclusion that that text of the condition did not include an obligation to admit it? Because I have to say just from a common sense point of view, it seems a little strange to say that you're in counseling for sex offender treatment, which means treatment for being a sex offender. And your position in the treatment is I'm not a sex offender. It's hard to see why one wouldn't think that the condition of the treatment is going to start from the premise that you acknowledge you have the problem and now we're going to treat it. Your position seems to be he agreed to the condition on the understanding that the treatment would proceed on the assumption he was not a sex offender. That's not very intuitive. So, Judge, that I think that is the conflict that's happening, you know, for people in treatment. So it would be like somebody who commits a domestic violence offense or somebody who commits a alcohol or drug offense, but does not acknowledge that they're an alcoholic or a drug or drug addict. However, the counseling can be ordered and in certain circumstances should be ordered. And then part of that counseling process, which is cited in my rebuttal brief, part of that counseling process is to help that offender, including sex offenders who are in denial, and help them become aware of certain risk behaviors and risk activities. So that is part of. Is it possible to comply with the condition if I take the vision from the beginning and make it clear I'm never going to acknowledge it? I mean, at what point do we is the counselor able to say, well, you're just not participating in the treatment, then, if you're going to be in denial throughout the whole thing? That seems to be what the case is actually about. And I guess I'm not understanding how the people administering the condition are supposed to deal on your theory with somebody who has made it clear no matter what, I'm never acknowledging that I was an offender. I mean, I understand you couldn't just day one maybe say, well, you're not participating. But at a certain point, it would seem that the judge is entitled or the probation is entitled to say, well, you're just not complying with the condition, then. Judge, that's a really fair point. And that is one of the confusing components of treatment for sex offenders is because oftentimes sex offenders are, in fact, in denial. It's one of the most difficult types of cases to deal with. First of all, Mr. Myers' conviction was 1980. He has had a long history of denial. He has then been cleared of sex offender counseling. And so what's confusing here is this is a case based on. There was a more recent episode, albeit a long time ago, still around 2000, involving his granddaughter. Right. There was a recent and you say episode and I would say allegation, Your Honor. So we might use different vernacular to explain that. And there was never any findings on that. But certainly for purposes of there was an allegation and or episode. That is part of counsel. What is your home run case for the proposition that it is not reasonable to to take the position that someone who's a. Ordered to undergo supervised release with sex offender treatment. Does not need to admit. That they that they are a sex offender. I will have to say that in terms of clarity on that question, I do not have a home run case and I'm not giving up on this. I don't feel they're suggesting that I'm I'm off off base. But I do think that what was the most helpful for me was Nikun V. Lyle, which is the United States Supreme Court. It was a plurality decision and it did. It did help to understand that there is a huge conflict and there are significant issues in terms of whether a person is able to be in denial. And that did relate to Fifth Amendment issues or not. And then break out that issue. And really what my research has shown me is it's very, very undecided and very confusing because you're dealing with the law, which I understand, Your Honor. Like if if a counselor says you need to acknowledge that your sex offender and you're in sex offender counseling intuitively, it makes sense that you acknowledge that. Or how else would it work? But where a court is imposing that condition and saying, look, you need to do that because it's better for society and perhaps you that you're in counseling. Then you have to take on different strides to that. Then then you have to look at that individual. And what I'm asking this court to do is say, if that's the case in the court, the lower court is imposing that condition. Then you really have to have. There is not a one design approach that works. You can't make everybody admit that they're a sex offender. First of all, I think the lower court. How do you respond to the question that the lower court held at least one hearing? There was a compliance hearing. I think there was also, you know, the the the second supervised released revocation of supervised release. So the defendant was in the courtroom in front of the district court judge who the record reflects seems to have spent a lot of time. Evaluating this defendant in terms of his demeanor, in terms of his responses and his the judge's reasoning is quite clearly articulated in the record. He basically says this is a man who for whom 12 months is an appropriate sentence. He even denied the request for 12, you know, a year and a day sentence. He made a judgment. And don't we. A lot allocates discretion to the to the judge in those situations. In that type of situation and in this situation, certainly discretion is allotted to to the judge, to the trial judge, of course. But in this case, it's clear that the reason that he was violated, the single reason was for his. Unwillingness to admit that he was a sex offender. And that's what I that is the sort of the problem of the argument and that what I'm asking this court to decide is. That you cannot violate somebody's supervisory release and or probation for failing to admit that they're sex offender. And in this case, he was in counseling. He was in counseling with a sex offender counselor. Understandably, it wasn't going great. I think that there's the record is clear that he has an antisocial personality disorder, that he's not a healthy individual. So it may never have he insists that he didn't need the counseling. And so I don't I don't understand how that could that could constitute full compliance in the order was that he fully participate. But we'll hear from Ms. Lopez and we'll hear from you later, Mr. Whipple. Thank you. Good morning. May it please the court. Julia Lopez for the United States. Your honor, there are two distinct questions presented by this appeal. One was the sex offender treatment condition reasonably imposed. We've set forth in our brief our position that that appeal is simply not timely. And then the second question is whether the revocation itself was proper. Did the district court properly find as a factual matter that the defendant had violated the condition and then was the revocation revocation and abuse of discretion? I'd like to if I may address the second issue first, which is as a factual matter, did this defendant violate the conditions of his release? Attorney Whipple has just told the court that the single reason that Mr. Myers was revoked was for his unwillingness to admit that he was a sex offender. And I would submit to the court that that is really misreading the record here. What the record shows in this case is that Mr. Myers simply never participated in sex offender treatment. And there was testimony both from the clinician and from the probation officer that he never did sex offender specific treatment. I point the court to pages eighty nine and ninety one of six and one twelve of the appendix. What the record shows getting into more detail is that the defendant, yes, engaged in counseling with his clinician, but it was just mental health counseling. The idea was to develop a therapeutic relationship because he was so resistant to this treatment. Ms. Lopez, wasn't the precondition for the next stage of the treatment his admission that he was a sex offender? And wasn't that the stumbling block to getting to the next stage?  But I would suggest not the only one precondition. I thought he had to sign something, say he admitted it to get to the next stage. He had to sign treatment contracts which were labeled adult offender contract that require him to acknowledge that he was a sex offender in some respects. But the clinician and the probation officer also testified that they were willing to modify aspects of that treatment plan. But that aspect, excuse me, not that aspect, the title, your honor, or the fact that he had to admit the fact that he had to admit, I didn't see anything in the record suggesting that there was a willingness to allow him to proceed on sex with sex offender treatment without having to admit he was one. Well, your honor, they actually testified both at pages. This was clinician Hogan at page 96 of the appendix that he and the probation officer had agreed that the defendant could go forward in treatment as a person, quote, unquote, in denial. And then the probation officer testified to something similar at page 110 of the appendix. So they had to say that I'm in denial. It's is a little different than saying you can go forward on the understanding you didn't do it. If I'm in denial, I'm acknowledging that I did it and I'm not acknowledging it. That's very different than going forward on the assumption I didn't do it. So I think it's hard to read the record not to understand it to be a precondition that he's going to have to be in counseling on the understanding that he is considered a sex offender. Well, your honor. Right. I think I guess those are two distinct questions. They were willing to let him proceed on the idea that he was in denial, in other words, not accepting responsibility for his conduct. The fact of the matter was he has been convicted of a sex offense. No, I'm not saying that he's right. I just want to understand if the record is that the reason he didn't comply. Was dependent on his unwillingness to acknowledge that he was a sex offender. Which is what your opponent's contending. And as far as I read, it's not clear that your opponent's wrong on that point. My understanding of your brief was that you win anyway. Yes, I think we I think we do. I mean, I think. Why is it permissible to put somebody in prison essentially for an extra year when they're willing to meet with a counselor? They just won't say, I don't know, early on a month in that. Yeah, I did. Well, I would suggest, your honor, a couple of things. First, it was not a month. And right. He first met with Mr. Hogan in May of 2018. I believe it was or perhaps even April of 2018 to begin the psychosexual assessment. And he was not terminated finally until November of 2019. So there was approximately 18 months of trying in various ways to get Mr. Myers to comply with this condition. Second, I don't think the record. Again, I understand that the treatment contract requires him to, I guess, say that he's an adult offender. But it doesn't require him to admit to all of the conduct. And what the question here is whether he complied with the sex offender treatment condition. The question regarding Mr. Hogan, you assert that the defendant's treatment was not part of sex offender treatment that. So the question really is, if it was not sex offender treatment, then what was the treatment for? And relatedly, was he in compliance with the condition when he was in free treatment? So, Your Honor, what the record shows and what Hogan testified to was that it was general, I guess, mental health counseling. And the idea was to establish a therapeutic relationship with the sex offender clinician. And Hogan himself testified, I never actually did any sex offender treatment with him. And this is perhaps a clumsy analogy, but it's perhaps akin to a teacher telling a student, you need to see a math tutor. The student going to see the math tutor, but saying, I'm only willing to be tutored by you in English. Right. So he's meeting with the sex offender clinician. But the clinician testified that he had never done any sex offender treatment. I think this is in the same vein as Judge Katzmann's question. Suppose he had refused to meet with Mr. Hogan. Would he have been in violation of the sex offender condition? Yes, the way that that respect, it was part of the condition. So he was in compliance with the condition, not just doing something unrelated to the condition during that whole period. You're just saying there was a later stage of compliance with the condition, which he refused to comply with, which is what happened when he wouldn't sign the contract and agree to the treatment regimen. Right. The condition reads, I believe, participate in sex offender treatment as directed by the supervising officer. So what happened at the compliance hearing is that the court, the probation, you know, made an agreement. The court directed him, OK, you're going to start with mental health counseling and then we'll move you into sex offender specific treatment. So I agree that he was doing what was asked of him in the beginning. The probation officer said, meet with Mr. Hogan. You're going to establish a therapeutic relationship. But he didn't continue. And what the record shows, in fact, is that he never engaged in what was considered sex offender treatment. That was the clinician's testimony. This is someone who has 18 years experience treating sex offenders. He said, I never gave him sex offender specific treatment. So I think the question for the court is, on that record, was the district court's finding that he wasn't in compliance clear error? And I submit it can't be when you've had a full hearing. The courts, in essence, heard from the expert in treating sex offenders. And the expert has said he was never willing to engage in sex offender treatment with me. That's one follow up question along those lines. If if Mr. Hogan and the probation officer agreed that it could go forward, the sex offender treatment could go forward on the basis of him being a person in denial. Was that communicated to him in any way? Is there any anything from the evidentiary hearing that would suggest to us that he knew he could proceed with sex offender treatment without acknowledging that he was a sex offender? I'm not certain your honor. I know they they said that they were, for example, willing to modify the treatment contract. They gave him time to consult with an attorney before terminating him. I know that the record shows that after he refused to sign the contracts, he had another meeting with the probation officer who had not been there before with Mr. Hogan to see if they could work through it. Their testimony was that his resistance was so entrenched at that point that they couldn't even discuss with him. They were not able to discuss with him modifications to the contract or the treatment plan. Yes. And what I'm struggling with or I'm trying to get to here is whether he fully participated or not, or whether he could reasonably have been viewed as fully participating or not fully participating, whether the gloss on it that that might have something to do with anything other than his refusal to acknowledge that he was a sex offender, or whether really what is at the heart of this is is simply that failure to acknowledge that or refusal to acknowledge that. I'm trying to I'm trying to understand what it is that we're supposed to be deciding here. And I can't tell, at least so far, I can't tell based on the evidentiary hearing. Your Honor, I think what the testimony was from Hogan and the probation officer and what the court found was that they had spent 18 months, you know, slow walking this process with him, trying to get him to a place where he would do the treatment. You've got an experienced clinician, an experienced probation officer saying flat out he is not amenable to treatment. We can't make this happen. And I think what the court can. Ms. Lopez, I think just on the question that Chief Judge Howard to ask you, and I guess I've asked you words like not complying with treatment, not cooperating, not doing treatment, just are aligning what is at least bothering me. And I think was in the focus of Judge Howard's question, which is, is that because he would not acknowledge that he was a sex offender? Or is it that even though he knew he could continue with the treatment while not acknowledging it, he still refused to continue with it? Those are two different things. The record does not, to me, make it clear that it was the second thing so that he knew it was made clear to him. If you want to say you're not a sex offender, that's fine. We'll still treat you. Or whether the stumbling block was he was insisting he was not an offender and the counselors were saying, well, we can't go forward if that's going to be your attitude and they couldn't get past that dispute. If it's this if it's the latter thing, which is what it looks like to me, that that's just what it is. And then I guess there just needs to be an argument that from your perspective, legally, that's fine. He's still not a compliance, but those are two very different accounts of the record. And so I think you kind of need to tell us what position you're taking with respect. If it's an either or position, that's fine, too. But but it doesn't help me particularly just to keep aligning those distinctions. And apologies. Let me see if I can clarify that. I think it is an either or position, Your Honor, on the on the legal question. I think it would be permissible to revoke him after 18 months when he still won't admit that he even has a sex offense conviction. And so I think that in the district court found, you know, he's still refusing to even accept or acknowledge that he has this conviction and won't go forward in treatment. And I think that would be a permissible basis on this record. Maybe not in the first month, but after 18 months to decide that this is someone who's just not complying on the question, though, of whether he knew he could go forward in denial, I would suggest to the court that the record is is unclear on that. I think inferences could be made from Hogan's and Turgeon's testimony that they had tried to work with him and that he, you know, just because there were that they were the word sex offender treatment. He essentially said, I don't need that. And he just wouldn't even listen to them. So I hope that answers the court's question. I think the record's unclear. But even if we assume that the stumbling block ultimately was that he would not admit he was a sex offender, we would suggest that that was a permissible basis and a valid basis on which to revoke his supervised release. Again, the court was incredibly patient with Mr. Myers, held a compliance hearing, took a great deal of time to try to bring him along to a place where he would comply. And the record, I would submit, suggests that this condition was warranted given his characteristics. Do you have any case law that provides a gloss or even examples of the phrase fully participate or meaningfully engage? The cases out there. Not that I'm aware of, Your Honor. I know that this court has several times approved of sex offender treatment conditions. I can't say for certain whether they use the language fully participate as opposed to just participate in sex offender treatment. But certainly this court, for example, has rejected arguments that, you know, that a condition like this delegates too much authority to the supervising officer, for example. So you seem to be saying that the fact that the defendant denied, if I understand you correctly, that in 1980, he was convicted of sexual assault, that denial in and of itself. That continuing denial constitutes a basis to revoke supervised release. It was that denial, that resistance that led him to refuse to engage in a sex offender treatment. And I would point out that the clinician terminated him from treatment. The revocation didn't happen until this very experienced sex offender clinician terminated him and said in his letter that he's, quote unquote, not amenable to treatment. So I would submit it wasn't a case where the court was saying simply, you won't admit you're in violation. He heard testimony from effectively the expert who said, I can't treat this person. And I agree with the court that a large part of that was that he would not admit that he had this condition, although I don't think the record suggests that was the only thing that was going on. He was incredibly hostile to this clinician from the very beginning, wouldn't even, you know, honestly answer questions on the psychosexual assessment or provide releases or any information that would enable the clinician to evaluate him. All right. Thank you. We'll hear from Mr. Whipple. Thank you. Thank you, Your Honor. Mr. Whipple, before you start, can I just ask one question? And that regards the government's claims that that the defendant did not designate the judgment for appeal. And that that is a critical defect. In this. You mean in terms of designating the judgment, the judgment, the 2001 judgment? I'm sorry. Right. You mean entirely? Are you blocked? Am I blocked by the entire appeal for nondesignation of the judgment? I think that the court certainly is aware and the judgment is clear. And the appeal was based on the factual matter of the 2020 probation revocation. And I don't think the government wins on that technicality. No. If I may, I think that Judge Barron, you're 100 percent correct. The issue is that can you violate a defendant for failing to fully comply with sex offender treatment for failing to admit that he is a sex offender? That is 100 percent the question at issue for today. And I think it would appear that all the justices have honed in on that issue. What do you make of the district court's finding that he showed nothing but hostility and was uncompromising in refusing to engage in any interactive process? How do you deal with that? What is clear from the record, Your Honor, is that he did, in fact, attend and participate in sex offender counseling. And to be clear from he was engaged in sex offender counseling. Dwayne Hogan is a is a certified sex offender counselor. That's virtually all he does. He had conducted psychosexual evaluations, sex offender polygraphs. I think it's disingenuous to continue the argument that he was not engaged in sex offender counseling. The productivity of the counseling is another issue. And I understand that for sure. The the other facet that's clear is that that Dwayne Hogan was able to do, I think what he referred to as denial counseling, was able to do that. That was never offered. What Dwayne Hogan in the record says is that he was that he might be willing to modify on cross examination of determined that he had no ability to. And what he meant by modifying is modifying the either the contract or treatment plan that he was himself not willing to do that. And then Bryce Turgeon in in his 2000 and 19 revocation report on the sealed Appendix 33 indicates on November. Mr. Stone, is your position that. The sex offender condition, sex offender treatment condition. If it's to be imposed, must allow for the defendant who's subject to it to go through its entirety, never acknowledging that there is sex offender. And that must be your that's OK. And I guess. Yeah. OK, but but but that sounds really bad. I get to let me it would. The issue is treatment. I think the question is, is it required that you get treated? Certainly that you're in treatment, but that you get better if you're an alcoholic. You may still be an alcoholic, but you're complying if you're a drug addict or a sex offender. You may still be a sex offender at the outset. It's there's not a requirement that you be cured. But I guess I guess two components that there's one is, OK, if that's your view, that that's an understanding. It doesn't seem to have been the understanding of either the district court or the counselors. And the text of the condition on its face doesn't compel that reading of it. It certainly allows the reading that the district court and the counselor. So what are you suggesting should lead us to the construction that you're saying we'd have to adopt? Is it that you don't cite a due process? Probably don't cite the Fifth Amendment. You don't cite a notice issue from the perspective. So I guess I'm just wondering if there's some argument out there. But I mean, on what we have, you just have a text of a provision that would allow them to have construed it the way they do. And a record showing they construed it that way. And then a defendant who in the face of that construction didn't comply with it. So I guess the only way I can see him winning is if we say, well, that was not a permissible construction. And I don't see what that tells me. I'm in a position where I can reject the district court's view that those words could be read the way they read it. If there is something, you know, we need to know about it. But. Well, certainly the law is not helpful in this context. And I think it's really a crossover between counseling and a more ever morphing and changing theories of what's effective in counseling. You know, one day, you know, one day it's it's it's the best source to have somebody admit. And then the next day there there are opportunities for successful counseling and treatment based on non admission of sex offenses. And so it's an ever morphing process. What I'm saying is, you know, that condition is, as you said, is is not permissible. I don't think there's a Fifth Amendment. You know, it's a 40 year old sentence that he's been convicted of. I mean, that doesn't apply here. For sure. That certainly has ramifications for other people. There's certainly due process requirements that exist. I think I you know, that argument was made in my in my my challenge to the legitimacy. But I'm but on this argument, I'm really stuck with, you know, I have limitations, at least in my mind on what I can argue on this. And he wasn't counseling. He was complying with counseling. It obviously wasn't going well. I'm not going to dispute that, but that shouldn't be the arbiter. I mean, the judges shouldn't say, well, you're not going you're not you're not improving quickly enough for me. I mean, that can't possibly be what a judge should be able to do with the varying people. And that's what happened here is he wasn't admitting. And that issue is clear. Excuse me. What is our standard of review here? The government claims that the plain error standard review applies to the imposition of the sex offender treatment condition here. Right. And that was based on an unpublished opinion. It's an abuse of discretion standard.  Thank you, Honor. That concludes argument in this case. Attorney Whipple and Attorney Lopez, you should disconnect from the hearing at this time.